# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| **RASHAD MATTHEW RIDDICK,** | ) | **Civil Action No. 7:13cv00402** |
| **Plaintiff,** | ) | |
| | ) | **MEMORANDUM OPINION** |
| **v.** | ) | |
| | ) | **By: Robert S. Ballou** |
| **CAPTAIN RYDER,** *et al.*, | ) | **United States Magistrate Judge** |
| **Defendants.** | ) | |

Rashad Matthew Riddick, proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that the defendants subjected him to cruel and usual living conditions and excessive force while he was a pre-trial detainee at Central Virginia Regional Jail ("CVRJ"). The defendants moved to dismiss Riddick's living conditions claim and moved for summary judgment as to Riddick's excessive force claim.[1] After reviewing the record, I find that Riddick has stated a plausible living conditions claim and that material disputes of fact exist as to Riddick's excessive force claim. Accordingly, I will deny defendants' motions.

## I. Riddick's Complaint

Riddick alleges that on April 4, 2013, after arriving at CVRJ, Officers Ryder, Vogt, and Neff assaulted him in a "small bathroom area located in the booking area." Riddick alleges that, while defendant Neff held Riddick's waist chain "in place," defendant Ryder choked him from behind, nearly causing [him] to pass out," and defendant Vogt punched him "repeatedly" in the ribs and face. Riddick states that the assault lasted "between 15 to 20 seconds" and that he suffered a bruised rib, a "busted" lip, and a swollen jaw.

---

[1] Before filing their motions, the defendants moved for an extension of time to respond to Riddick's complaint. After the court granted that motion, Riddick filed a "motion in opposition to time extension," asking the court to deny the defendants' motion. Inasmuch as the motion for an extension of time was already granted, I will deny Riddick's motion in opposition as moot.

Riddick also complains that he was housed in the Special Housing Unit ("SHU") for "well over 22 continuous months" without any formal review or opportunity to integrate into the general population.  Riddick alleges that while in the SHU, he stayed in his 8-foot by 6-foot cell for 23 hours and 15 minutes each day, and on weekends, he was not permitted to leave his cell at all.[2]  When he did leave his cell during the week for 45 minutes each day, he was shackled at the ankles, handcuffed, and chained at the waist and taken to an indoor, small "rec-area," where he remained in handcuffs and leg-irons at a round metal table with no recreational equipment, "no religious program," and no television.[3]  Riddick also complains that his food was "pushed through a small tray slot in the door" at meal time.  As a result of the "prolonged periods of seclusion and forced idleness," Riddick alleges that he has lost "over 40 pounds" and that his "previously existing mental illnesses have been exacerbated a hundredfold."

Riddick alleges that he has "attempted in good faith" to utilize the grievance procedure at CVRJ to challenge the SHU conditions, but that several officers, including defendants Ryder and Vogt, have thrown away his request forms.  In addition, Riddick alleges that defendant Neff and two other officers have "flat-out fabricat[ed] institutional charges [against Riddick] at the behest of [defendant] Superintendent Aylor in an effort to give an appearance that [Riddick is] being held on administrative segregation status due to [his] behavior and/or institutional adjustment, [which] is clearly not the case."  Riddick states that despite the "frivolous charges," he has remained infraction free for 18 months.

---

[2] In contrast, Riddick alleges that general population inmates are permitted to be out of their cells 16 hours each weekday and 18 hours each weekend day.

[3] In contrast, Riddick alleges that general population inmates are given one hour of outside recreation each day, can "engage in religious intercourse with peers and a chaplain" two days each week, can watch television 18 hours each day, and can apply for jobs.

## II. Motion to Dismiss: Living Conditions

The defendants have moved to dismiss Riddick's living conditions claim pursuant to Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."[4] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Confinement conditions of pretrial detainees are to be evaluated under the due process clause of the Fourteenth Amendment rather than the Eighth Amendment's prohibition against cruel and unusual punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). However, the due process rights of detainees are at least coextensive with Eighth Amendment rights of convicted prisoners, "and perhaps greater." *McCrae v. Oldham*, No. 91-6598, 1992 U.S. App. LEXIS 21711, at *4, 1992 WL 216642, at *2 (4th Cir. 1992) (citing *Whisenant v. Yuam*, 739 F.2d 160 (4th Cir. 1984); *Loe v. Armistead*, 582 F.2d 1291, 1292 (4th Cir. 1978)). To prevail on a conditions of confinement claim, a pretrial detainee must show either (1) an expressed intent to punish, or (2) lack of a reasonable relationship to a legitimate nonpunitive governmental objective, from which a punitive intent may be inferred. *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992) (citing *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988)).

---

[4] A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In his complaint, Riddick alleges that he was subjected to "extremely harsh conditions" for "well over" 22 consecutive months. Riddick alleges that he attempted to challenge these conditions but the defendants discarded his grievance forms. Riddick also alleges that the defendants fabricated institutional charges against him as an attempt to justify his placement in the SHU. Riddick states that he remained infraction free for 18 months and that it is "clearly not the case" that he had any behavior or institutional adjustment issues to warrant his placement in the SHU. Accepting all factual allegations in the complaint as true and drawing all reasonable inferences in favor of Riddick, I find that Riddick's complaint alleges a plausible living conditions claim. Accordingly, I will deny the defendants' motion to dismiss this claim.[5]

### III. Motion for Summary Judgment: Excessive Force

The defendants have moved for summary judgment as to Riddick's excessive force claim. Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must

---

[5] In addition to their initial memorandum in support of their motion to dismiss, the defendants also filed two supplemental memorandums (Docket Nos. 28 and 36) and attached exhibits to each. In the first supplemental memorandum, the defendants indicate that several months after Riddick filed this action, they transferred him from the SHU to housing in C Block. The defendants allege that in this new housing unit, Riddick was allowed visual and verbal contact with other inmates, he was able to see the television from his cell, he could have indoor or outdoor recreation at least once a week, he could request a religious leader meet with him one on one, and he was allowed out of his cell one hour each day without restraints. Accordingly, the defendants argue, Riddick's living conditions claim is moot. In their second supplemental memorandum in support of their motion to dismiss, defendants state that after being housed in C Block for approximately one month, Riddick attacked another inmate and Riddick was sent back to segregation. In addition, defendants state that a hearing was held in February 2014 in Madison County Circuit Court where the state court judge declined to transfer Riddick to a different facility. However, I decline to consider the defendants' supplemental responses, and thereby convert the motion to dismiss into one for summary judgment under Rule 12(d), because the supplemental evidence contained in the responses does not bear on the constitutionality of Riddick's 22 months of confinement described in his complaint.

4

be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 250. In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw reasonable inferences in the light most favorable to the nonmoving party. *See, e.g., id.* at 248-50; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999).

A pretrial detainee's claim of excessive force is governed by the Due Process Clause of the Fourteenth Amendment. *Orem v. Rephann*, 523 F.3d 442, 446 (4th Cir. 2008). The due process rights of a pretrial detainee are "at least as great as the Eighth Amendment protections available to a convicted prisoner." *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). To succeed on an excessive force claim, a plaintiff must demonstrate that the defendant "inflicted unnecessary and wanton pain and suffering" upon him. *Whitley v. Albers*, 475 U.S. 312, 320 (1986); *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008). This determination turns on whether the force was applied "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley*, 475 U.S. at 320-21 (internal quotation marks omitted); *see Wilkins v. Gaddy*, 559 U.S. 34 (2010) (describing this as the "core judicial inquiry"). "An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins*, 559 U.S. at 38. However, the court must accord due deference to an officer's efforts to restrain a detainee when faced with a dynamic and potentially violent situation; otherwise, "we would give encouragement to insubordination in an environment which is already volatile enough." *Grayson v. Peed*, 195 F.3d 692, 697 (4th Cir. 1999).

5

In support of their motion for summary judgment, the defendants provide two affidavits and a letter and argue that "it is clear" from these documents that Riddick's allegations have no merit. The first affidavit is from the nurse who conducted the "medical receiving assessment" during Riddick's intake at CVRJ. According to the nurse, she conducted the assessment in the booking area of CVRJ after Riddick returned from the shower area and during the assessment, Riddick denied having any current injuries and did not report that he had been assaulted. The second affidavit is from an officer at CVRJ who escorted Riddick to court the day after the alleged assault. According to the officer, Riddick did not complain about an assault and the officer did not observe any bruises or injuries on Riddick. Further, the officer states that he did not hear Riddick or Riddick's attorneys complain to the court about an assault or any injury. The letter, dated December 13, 2013, is from the Commonwealth's Attorney for the County of Orange, Virginia, and states that the Virginia State Police investigated Riddick's allegation "regarding his treatment while at" CVRJ. The Commonwealth's Attorney states that after reviewing the results of the investigation, she is declining to prosecute because "there is no evidence, other than Riddick's allegation, of any physical assault."[6]

In response to the defendants' motion for summary judgment, Riddick asserts that he did not report the assault or any injuries to the intake nurse because the assault happened after her assessment. In response to the defendants' argument that Riddick did not report the assault or any injuries to his attorney or the court the day after the alleged assault, Riddick provides a declaration from his attorney stating that the court hearing lasted "about five minutes," neither counsel nor his co-counsel had an opportunity to speak with Riddick, and Riddick sat about fifteen feet away from counsel during the hearing. Further, counsel states that Riddick did not

---

[6] I note that the Commonwealth's Attorney's letter provides no detail of the assault referenced in her letter (e.g., date of the alleged assault, perpetrators of the assault, alleged injuries) that would conclusively link her letter to the incident at issue in this case.

6

have an opportunity to address the court and that the court had previously admonished Riddick not to speak except through his counsel or when addressed by the court.

I find that, when viewing the record as a whole, and drawing reasonable inferences in the light most favorable to Riddick, there are genuine issues of material fact concerning Riddick's claim that Officers Ryder, Vogt, and Neff used excessive force against him. Accordingly, I will deny defendants' motion for summary judgment as to this claim.[7]

Enter: September 29, 2014

*/s/ Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge

---

[7] Riddick also filed a motion for summary judgment concerning his excessive force claim, arguing that the defendants do not deny that they assaulted him and, therefore, there is no genuine issue of material fact. However, in their answer to Riddick's complaint (Docket No. 20), the defendants deny all allegations in Riddick's complaint concerning his excessive force claim. Accordingly, I find a genuine issue of material fact as to whether the assault actually occurred. Therefore, I will deny Riddick's motion.
    Riddick has also filed two motions for default judgment based on defendants' "failure" to respond to Riddick's motion for summary judgment. However, I find no basis for granting default judgment and, therefore, will deny the motions.